IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3040-FL

| | | |
|---|---|---|
| DEAN VANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DR. RICHARD O. BROADWELL, III, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter comes before the court on defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 48), to which plaintiff responded. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants defendant's motion.

**STATEMENT OF THE CASE**

For ease of reference, the statement of case as set forth in the court's May 16, 2013, order, is restated here:

> On February 24, 2011, plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983, alleging that defendant [Dr. Richard O. Broadwell, III ("defendant")] acted with deliberate indifference to his medical needs in violation of the Eighth Amendment to the United States Constitution. Defendant subsequently moved to dismiss plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. On August 6, 2012, the court entered order granting in part and denying in part defendant's motion to dismiss. Defendant's motion was granted as to plaintiff's negligence and assault and battery claims. Defendant's motion was denied as to plaintiff's remaining claims, including his Eighth Amendment claim, his supervisor liability claim,

and a claim for punitive damages. The court denied plaintiff's request for appointment of counsel.

The court also directed the Clerk of Court to issue initial order, which order did not follow through inadvertence or oversight. Plaintiff issued discovery requests nonetheless, from which defendant seeks in separate motion to be protected from having to respond to, because also on October 12, 2012, defendant filed his second motion to dismiss. Defendant asserts therein that he is entitled to qualified immunity.

On May 16, 2013, the court entered an order denying defendant's second motion to dismiss and motion for a protective order. The court, thereafter, issued a case management order governing discovery and the filing of dispositive motions.

On November 21, 2013, defendant filed a motion for summary judgment arguing that plaintiff is unable to establish a constitutional violation. Alternatively, defendant raises the affirmative defense of qualified immunity. Plaintiff responded to defendant's motion, including with submission of a sworn declaration as well as medical records.

**STATEMENT OF UNDISPUTED FACTS**

The undisputed facts may be summarized as follows. On December 11, 2009, Dr. Robert Owens examined plaintiff, a state inmate, at Maury Correctional Institution ("Maury") in response to plaintiff's complaints of right ankle pain. (Broadwell Aff. ¶¶ 7-8 and Ex. 4.) Dr. Owens noted that plaintiff reported a six month history of right ankle pain as a result of an injury. (Id.) Plaintiff informed Dr. Owens that he had pain with lateral movements and that, although he wore an ACE wrap on his ankle, it had provided little improvement. (Id.) Dr. Owens assessed plaintiff with a sprained ankle and ordered Ibuprofen, a soft pull-on ankle sleeve, and that an electromagnetic radiation ("x-ray") test be performed on plaintiff's right ankle. (Id.; Pl's Aff. (DE53) ¶ 4.) The x-ray report indicated that the space in the joint of plaintiff's right ankle was narrowing and that

osteophytes (bone spurs) and osteopenia (low bone mineral density) were present. (Broadwell Aff. and Ex. 5.) The report stated that plaintiff had osteoarthritis of the right ankle. (Id.)

On December 30, 2009, a nurse at Maury examined plaintiff in response to plaintiff's complaints of right ankle pain when walking or standing. (Id. and Ex. 6.) Plaintiff informed the nurse that he had significant pain the prior weekend, rating it as a 8 or 9 out of 10. (Id.) The nurse assessed plaintiff with chronic pain related to his right ankle sprain, and instructed him to continue his current course of care which included wearing the ankle brace and taking Ibuprofen. (Id.) Plaintiff did not voice any complaints related to his right ankle from December 31, 2009, through May 4, 2010. (Id. ¶ 9 and Exs. 2, 7.)

On May 4, 2010, plaintiff was transferred from Maury to Pamlico Correctional Institution ("Pamlico"). (Id.) Upon arriving at Pamlico, plaintiff had a health screening, which showed that he was receiving treatment for his right ankle, right shoulder, hypertension, and gastroesophageal reflux disease ("GERD"). (Id.)

On May 13, 2010, Nurse Mary M. Gaskill ("Nurse Gaskill") responded to a sick call appointment request in which plaintiff requested to see a doctor concerning his knee and right ankle pain. (Id. ¶ 10 and Exs. 3, 8.) Plaintiff also requested that a physician change his bed assignment due to "arthritis and osteoporosis" in his ankle. (Id.) Nurse Gaskill noted that a record review was performed and that plaintiff's PULHEAT[1] System Assessment, completed on October 13, 2009, was normal. (Id.) As a result, plaintiff was assigned an activity grade of level 1. (Id.) Nurse Gaskill

---

[1] This acronym stands for "(P) Physical Capability; (U) Upper Extremities; (L) Lower Extremities; (H) Hearing; (E) Eyes; (A) Activity; and (T) Transportation." (Broadwell Aff. ¶8).

3

determined that there was no indication for plaintiff to have a bottom bunk and denied his bed assignment request. (Id.)

Plaintiff next submitted a sick call request on June 16, 2010, reporting swelling and requesting a refill of his Naproxen prescription. (Id. ¶ 12 and Exs. 10, 11.) Nurse Gaskill examined plaintiff on June 21, 2010, and noted that plaintiff ambulated upright with a steady gait and without a limp. (Id.) Nurse Gaskill also observed that plaintiff's right ankle had minor swelling, was not red, had good range of motion, and had adequate capillary refill. (Id.) Nurse Gaskill noted that plaintiff's December 15, 2009, x-ray revealed he had osteoarthritis, and that plaintiff requested gel insoles for his shoes. (Id.) Nurse Gaskill informed plaintiff that his Naproxen prescription had been re-filled and encouraged him to use analgesic balm for his ankle pain. (Id.) Defendant subsequently ordered Spenco gel insoles for a period of one year, and plaintiff received his gel insoles on July 1, 2010. (Id. ¶¶ 12, 13 and Ex. 11.) In addition, plaintiff received a new ankle brace pursuant to Dr. Owens' December 11, 2009, order. (Id. ¶ 13 and Ex. 11.)

Plaintiff was seen by Nurse Clark on September 13, 2010, in response to a sick call request complaining that his boots were hurting his toes and the bottom of his feet. (Id. ¶ 16 and Ex. 14.) Plaintiff did not complain about ankle pain, but the nurse noted that plaintiff was wearing an ankle brace and gel insoles. (Id.) Nurse Clark ultimately assessed plaintiff with an alteration in comfort due to bunions and misaligned toes. (Id.) Nurse Clark referred plaintiff to the camp physician. Id.

On September 15, 2010, defendant examined plaintiff. (Id. ¶ 17 and Exs. 3, 4, 5, 7, 13, and 14.) During the examination, plaintiff complained of discomfort in both feet. (Id.) When defendant examined plaintiff's ankle, he noted that the mild degenerative changes in the form of osteoarthritis, reported in the December 15, 2009, radiology report were not clinically apparent.

4

(Id.) Defendant also noted that plaintiff exhibited normal strength and range of motion in his ankle. (Id.) Defendant's examination showed that plaintiff's right foot had a mild abducto valgus deformity (bunion) with an overlapping second toe and his left foot had a minimal hallux deformity (lateral deviation of the great toe). (Id.) No other deformities were noted. (Id.) Defendant assessed plaintiff with mild abducto valgus of the right foot. (Id.) Defendant further determined that there was no clinical indication for the continued use of plaintiff's ankle brace and ordered that it be discontinued. (Id.; Pl's Aff. (DE 53) ¶ 6.)) Defendant also denied plaintiff's request for orthopaedic shoes because defendant had previously entered an order for gel insoles for use in plaintiff's State-issued boots. (Broadwell Aff ¶ 17 and Exs. 3, 4, 5, 7, 13, and 14.)

On October 7, 2010, Nurse Keith Hull ("Nurse Hull") contacted defendant regarding alternatives for plaintiff's right ankle brace. (Id. ¶ 18, and Ex. 5.) Defendant explained to Nurse Hull that based upon his examination of plaintiff, plaintiff experienced only a placebo effect with the use of the ankle brace. (Id.)

Plaintiff did not voice any complaints of ankle pain between the dates of September 15, 2010, and November 22, 2010. (Id. ¶ 20 and Ex. 15.) On December 6, 2010, Nurse Gaskill examined plaintiff in response to his complaints of ankle soreness and pain in his toes and instep related to bunions. (Id.) During the examination, Nurse Gaskill noted that plaintiff ambulated with a steady gait and without evidence of a limp. (Id.) Nurse Gaskill observed several bunions on plaintiff's feet with minor redness due to apparent rubbing, and that his shoes were tight. (Id.) Nurse Gaskill assessed plaintiff with alteration in comfort related to bilateral musculoskeletal pain in his feet and right ankle. (Id.) Nurse Gaskill recommended Tylenol and instructed plaintiff to increase his daily activity to maintain his health status and exercise his feet daily. (Id.) Nurse

5

Gaskill also spoke with a custody officer about getting plaintiff a better fitting pair of shoes. (Id.) Defendant provided a telephone order for plaintiff to receive Scholl's corn cushions for a period of three months. (Id.)

On December 15, 2010, plaintiff saw Nurse Gaskill in response to sick call requests complaining of foot pain due to his bunions. (Id. ¶ 21 and Ex. 16.) During the examination, plaintiff advised Nurse Gaskill that he was wearing larger shoes, but was still experiencing rubbing, which was causing bunions to form. (Id.) Nurse Gaskill instructed plaintiff on how to apply the Scholl's corn cushions and advised him to place a sick call appointment request if his condition worsened. (Id.)

On December 29, 2010, Nurse Hull examined plaintiff in response to a sick call request complaining of foot pain due to bunions.[2] (Id. ¶ 22 and Ex. 18.) During the examination, Nurse Hull observed that plaintiff had old calluses on the tops of his toes and that there was slight redness of a small bunion. (Id.) Nurse Hull also examined the bottom of plaintiff's feet due to his complaints of soreness, but they appeared normal. (Id.) Nurse Hull noted that plaintiff ambulated well and without any signs of pain. (Id.) Nurse Hull, after conferring with defendant, recommended x-rays to assess plaintiff's foot pain, and the x-ray occurred on December 30, 2010. (Id. ¶¶ 22, 23 and Exs. 18, 19.) The radiologist interpreting the x-ray results concluded that both of plaintiff's feet showed signs of mild degenerative joint disease but otherwise showed no signs of fracture or dislocation. (Id. and Ex. 19.)

---

[2] Plaintiff submitted sick call requests on December 5, 12, 14, 20, and 23. (Pl's Aff. (DE 53) Attach, Ex. 5; Broadwell Aff. ¶ 24.)

6

On January 6, 2011, Nurse Gaskill saw plaintiff, in response to a sick call request, and referred plaintiff to defendant. (Id. ¶ 24 and Exs. 5, 20.) Based upon plaintiff's complaints regarding his foot pain, x-rays of his feet, diagnosis of the cause of his foot pain, and the current treatment plan, defendant instructed that no further treatment was medically indicated because plaintiff's x-ray results revealed only mild degenerative joint disease, which was being treated with pain medication. (Id. ¶ 24.)

Nurse Gaskill again examined plaintiff on January 20, 2011, in response to plaintiff's complaints of foot pain and bunions on January 13, 2011. (Id. ¶ 25 and Ex. 21.) During the examination, Nurse Gaskill noted that plaintiff ambulated with a steady gait and without limping. (Id.) Plaintiff complained that he had not received any relief of his foot pain in spite of numerous treatments, including Naproxen. (Id.) Plaintiff stated that his pain increased daily, and was especially painful in the morning around his arches. (Id.) Nurse Gaskill instructed plaintiff to take Tylenol and expressed an intent to refer plaintiff to the camp physician.[3] (Id.)

On January 28, 2011, Nurse Gaskill examined plaintiff in response to a sick-call request in which plaintiff complained of foot pain, particularly in the soles of his feet. (Id. ¶ 27 and Ex. 23.) Nurse Gaskill contacted defendant, and defendant recommended that plaintiff continue taking his current anti-inflammatory medication. (Id.) On February 3, 2011, plaintiff submitted a sick call request complaining of foot pain. (Pl's Aff. (DE 53) Attach., Ex. 7.)

On February 21, 2011, Nurse Hull saw plaintiff in response to a February 14, 2011, sick call requested in which plaintiff complained of foot pain and bunions. (Broadwell Aff. ¶ 29 and Ex. 25.) During the examination, Nurse Hull noted that plaintiff complained of 5 or 6 out of 10 pain in the

---

[3] Although Nurse Gaskill noted that her plan was to refer plaintiff to the camp physician for his complaints related to his feet, neither plaintiff nor his chart were actually referred to defendant for evaluation at that time. (Id.)

7

soles of his feet. (Id.) Plaintiff stated that he was using Naproxen as directed, but that it was not effective and neither were the gel insoles. (Id.) Hull expressed an intent to refer plaintiff to the camp physician.[4] (Id.) Plaintiff, however, states that Broadwell refused to see him. (Pl's Aff. (DE 53) ¶ 13.) A nurse saw plaintiff on that date and noted an intent to place plaintiff's chart before the physician. (Id.)

On March 29, 2012, defendant examined plaintiff in response to plaintiff's complaints of foot pain, and ordered plaintiff "Dr. 2 Shoes." (Pl's Request for Admissions, DE 43, p. 3.) On June 21, 2012, Dr. E. Lassiter prescribed plaintiff a pair of "Dr. 2 Shoes." (Pl's Aff. (DE 53) Attach. Ex. 9.) Then, on September 3, 2013, medical staff prescribed plaintiff a pair of black boots. (Id. Ex. 10.)

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

---

[4] Although Nurse Hull noted that his plan was to refer plaintiff to the camp physician for plaintiff complaints related to his feet, neither plaintiff nor his chart was referred to defendant. (Id. ¶ 34) Defendant states that even if he had been made aware of plaintiff's ankle pain complaints, it was his professional medical judgment that plaintiff's ankle did not require further follow-up care, referral to a specialist, or surgical intervention. (Id.).

8

B.  Analysis

Defendant raises the defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether plaintiff establishes a constitutional violation. To prevail on an Eighth Amendment claim of inadequate medical care, an inmate must allege acts or omissions sufficiently harmful to constitute deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 106 (1976). First, he must objectively show that the deprivation suffered or injury inflicted was "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). A sufficiently serious medical need is one that requires medical treatment. Brice v. Virginia Beach Corr. Cntr., 58 F.3d 101, 104 (4th Cir. 1995). Then, the inmate must show that the defendant acted with deliberate indifference to his serious medical need. Farmer, 511 U.S. at 834. A prison official is deliberately indifferent to a serious medical need if he knows of and disregards "an excessive risk to inmate health or safety." Odom v. South Carolina DOC, 349 F.3d 765, 770 (4th Cir. 2003) (internal quotation marks omitted).

Defendant first argues that plaintiff's osteoarthritis does not constitute a serious medical condition for the purposes of the objective prong of the Eighth Amendment test. However, arthritic

9

conditions which affect daily activities and cause chronic pain may satisfy the objective prong of the Eighth Amendment test. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir.2008) (stating that a serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention") (internal quotation marks omitted); see, e.g., Ward v. Deboo, No. 1:11CV68, 2012 WL 2359435, at *2 (N.D.W. Va. June 20, 2012) (stating that arthritic conditions meet this standard), aff'd, 482 F. App'x 852, 853 (4th Cir. 2012). Thus, the for the purposes of this motion, the court assumes plaintiff satisfies the objective prong of the Eighth Amendment test.

The court next turns to the second prong of the test – whether this defendant acted with deliberate indifference to plaintiff's medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105-106; Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

The court begins with plaintiff's claim that defendant acted with deliberate indifference when he discontinued the ankle brace ordered by Dr. Owens on December 11, 2009, without adequate examination. Plaintiff's medical records belie this claim. In particular, the records reflect that defendant examined plaintiff on September 15, 2010, and determined that plaintiff's ankle had

10

normal strength, range of motion, and did not exhibit symptoms of a sprain. (Broadwell Aff. ¶ 17 and Ex. 14.) Based upon this examination and a review of plaintiff's prior medical records, defendant exercised his medical judgment and determined that the right ankle brace no longer was necessary. (Id. ¶¶ 17, 18 and Ex. 14.) Plaintiff's disagreement with defendant's medical judgment, which does not raise any exceptional circumstances, fails to state a § 1983 claim. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Plaintiff also contends that defendant failed to provide him treatment for his ankle condition after defendant discontinued his ankle brace on September 15, 2010. Plaintiff's medical records show that Pamlico medical staff was responsive to plaintiff's complaints of foot and ankle pain. The record reflects that defendant continued to be involved in the treatment of plaintiff's feet and ankle even after plaintiff's ankle brace was discontinued. Specifically, on October 7, 2010, defendant discussed with Nurse Hull alternatives to plaintiff's ankle brace, and defendant reiterated his medical opinion that the ankle brace was not aiding plaintiff's ankle. (Broadwell Aff. ¶ 18 and Ex. 5.) Then, in December 2010, defendant prescribed Scholl's corn cushions to treat plaintiff's foot pain. (Id. ¶ 20 and Ex. 15.) Also, during this time, defendant periodically reviewed plaintiff's medical file and determined that no additional treatment was required based upon plaintiff's medical records and defendant's prior physical examination. (See Id. ¶¶ 23, 24.) The record further reflects two occasions on which the treating nurse noted an intent to refer plaintiff's file to defendant, but the file was never referred to defendant. (Id. ¶¶ 25, 28.) Finally, plaintiff's own evidence shows that defendant continued to provide treatment for plaintiff's foot and ankle condition subsequent to the filing of this action. See ((DE 43), p. 3.) Based upon the foregoing, the court finds that there is no evidence that defendant actually knew of and disregarded plaintiff's ankle condition.

11

Plaintiff's requests for surgery or a referral to an orthopedic specialist amount to nothing more than a disagreement over the proper course of treatment. See, e.g., Russell, 528 F.2d at 319. It is well settled that such a disagreement does not constitute an Eighth Amendment claim. See id. Moreover, although plaintiff asserts that defendant's efforts in diagnosing and treating his medical needs were not effective, the fact that the treatment of him was not effective does not give rise to a constitutional violation. See Williams v. Branker, 462 F. App'x 348, 355 (4th Cir. 2012) ("Williams points to no authority for the proposition that the Eighth Amendment entitles him to 'effective' treatment."); see e.g., Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009). At most, defendant's conduct could be construed as negligence, which is not sufficient to state a constitutional violation. See Estelle, 429 U.S. at 105-106. To the extent plaintiff alleges that defendant's decision to discontinue the ankle brace was contrary to what Dr. Owens would have done, such disagreement by medical professionals as to treatment does not support a claim for deliberate indifference. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011); Bowing v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Thus, defendant is entitled to summary judgment for this claim.

As for any alleged delay in providing medical treatment, "[a] delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Abraham v. McDonald, 493 F. App'x 465, 466 (4th Cir. 2012) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)); Webb v. Hamidullah, 281 F. App'x. 159, 166 (4th Cir. 2008) ("An Eighth Amendment violation only occurs [] if the delay results in some substantial harm to the patient."). Here, there is no evidence of any intentional delay in treatment. Further, plaintiff has not alleged any "substantial harm" as a result of any alleged delay, nor produced evidence that

12

any delay by defendant exacerbated plaintiff's injury or unnecessarily prolonged plaintiff's pain. Rather, plaintiff complains of pain resulting from his mild degenerative joint disease for which there is no cure. (Broadwell Aff. ¶ 33.) Thus, plaintiff fails to state a constitutional violation.

Finally, plaintiff incidentally references that defendant acted with deliberate indifference to his alleged knee and shoulder pain. Plaintiff, however, provided no factual support for these allegations. Further, such allegations are refuted by plaintiff's medical records. Thus, plaintiff fails to state a constitutional claim relative to his alleged knee and shoulder pain. See Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of" the nonmoving party's case) (internal quotation marks omitted).

Based upon the foregoing, plaintiff's allegations are not sufficient to establish the subjective element of his Eighth Amendment deliberate indifference claim against defendant. Consequently there is no constitutional violation, and defendant is entitled to qualified immunity on plaintiff's claim. Because the court has determined that plaintiff has not established a constitutional violation, plaintiff's claims for injunctive relief are DENIED. See Bennett v. Reed, 534 F. Supp. 83, 86 (E.D.N.C. 1981) ("Injunctive relief may be granted only upon plaintiff's proof of constitutional violations."), aff'd, 676 F.2d 690 (4th Cir. 1982).

## CONCLUSION

Based upon the foregoing, defendant's motion for summary judgment (DE 48) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 26th day of March, 2014.

*/s/ Louise W. Flanagan*

LOUISE W. FLANAGAN
United States District Judge